IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| LISA FAYE JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:10-CV-016 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This is an action for judicial review, pursuant to 42 U.S.C. § 405(g), of defendant Commissioner's final decision denying plaintiff's claim for disability insurance benefits. For the reasons provided herein, defendant's motion for summary judgment [doc. 14] will be granted, and plaintiff's motion for judgment on the pleadings [doc. 10] will be denied. The final decision of the Commissioner will be affirmed.

I.

*Procedural History*

Plaintiff applied for benefits in January 2008, claiming to be disabled by neck pain, back pain, degenerative disc disease, "joint disease, nerve disorder," bone spurs, seizures, osteoarthritis, sleep apnea, diabetes, carpal tunnel syndrome, and a herniated disc. [Tr. 82, 104]. She alleged a disability onset date of August 27, 2007. [Tr. 82]. Plaintiff's

claim was denied initially and on reconsideration. She then requested a hearing, which took place before an Administrative Law Judge ("ALJ") in April 2009.

In June 2009, the ALJ issued a decision denying benefits. He concluded that plaintiff suffers from the severe impairments of "disorder of the spine, disorder of the wrist, a seizure disorder, and obesity," but that these conditions do not meet or equal any impairment listed by the Commissioner. [Tr. 30]. The ALJ found plaintiff's subjective allegations to be overstated. [Tr. 34]. The ALJ concluded that plaintiff retains the residual functional capacity ("RFC") to perform light exertion, subject to seizure precautions. [Tr. 31]. Citing vocational expert testimony, the ALJ further concluded that a significant number of jobs exist in the national economy to accommodate plaintiff's RFC. [Tr. 35]. Plaintiff was accordingly deemed ineligible for benefits.

Plaintiff then sought review from the Commissioner's Appeals Council. Review was denied on December 11, 2009. [Tr. 3]. The ALJ's ruling therefore became the Commissioner's final decision. *See* 20 C.F.R. § 404.981.

Through her timely complaint, plaintiff has properly brought her case before this court for review. *See* 42 U.S.C. § 405(g). Plaintiff argues that the ALJ "ignored" the opinions of one examining and two reviewing physicians. Plaintiff also vaguely alludes to "other limitations" related to her "very severe seizure disorder."

II.

*Background*

Plaintiff was born in 1967. [Tr. 82]. She worked as a nursing assistant from 1986 through August 2007. [Tr. 105]. Plaintiff stands 5'4" tall and weighs as much as 351 pounds. [Tr. 458].

Plaintiff is reportedly able to do only minimal activities due to pain, numbness in the left hand, and difficulty reaching overhead. [Tr. 16, 113-14]. She claims she cannot sit or stand for more than three minutes without experiencing lower back pain. [Tr. 16-17]. Plaintiff is, however, able to walk her daughter to the school bus stop, shop for groceries, walk to the mailbox or to visit her mother next door, cross-stitch, attend her daughter's band performances weekly, and go out to eat. [Tr. 113, 116-17, 127].

Carpal tunnel syndrome allegedly renders plaintiff unable to open a jar or use a calculator or keyboard. [Tr. 15]. In addition, plaintiff claims to experience seizure-like episodes of undetermined origin which began in 2007. [Tr. 11]. She testified at the administrative hearing in 2009 that she suffers eight to ten seizures per month [Tr. 12], and in 2008 she told the Commissioner that she has three to four seizures per week. [Tr. 148]. However, two weeks prior to the administrative hearing she told a medical source that she only has two seizures per month [Tr. 668], and on other occasions she has further denied the frequency of seizures represented to the Commissioner. [Tr. 585, 610, 624, 659].

3

III.

*Relevant Medical Evidence*

In April 2007, plaintiff first reported seizure-like symptoms while at work. [Tr. 182]. The medical record alternatively refers to these symptoms as "events," "spells," or "confusional episodes."

An August 2007 cervical MRI indicated a minor degree of flattening at C3-4 and minor bulging at C4-5. [Tr. 186-87]. Plaintiff visited neurosurgeon Rebekah Austin in August 2007 regarding her complaints of cervical pain, bilateral shoulder pain, and bilateral hand numbness. Carpal tunnel testing was positive at each wrist [Tr. 200], and a subsequent nerve conduction study showed neuropathy of the right elbow. [Tr. 184-85]. Dr. Austin's examination revealed minor cervical muscle contractions along with a restricted range of motion of the back and neck. [Tr. 200]. Muscle strength and tone were full throughout the body. [Tr. 200]. Dr. Austin scheduled physical therapy focusing on the cervical spine. [Tr. 201].

Plaintiff commenced physical therapy in September 2007. Throughout the course of her therapy, plaintiff rated her pain as between 2 and 6 out of 10 [Tr. 240, 244, 251, 253-54], and she generally reported that the sessions were beneficial in reducing her pain. [Tr. 239-40, 244, 247, 249, 251-52]. Plaintiff discontinued physical therapy in November 2007 as she had exceeded her insurance benefits for the year. [Tr. 228, 231]. Plaintiff returned for one further appointment in December 2007, reporting that she had been

experiencing "a lot of pain" (which she rated at 4/10) since discontinuing physical therapy. [Tr. 220].

Plaintiff returned to Dr. Austin in November 2007. Plaintiff acknowledged that physical therapy reduces her neck pain. [Tr. 193]. Dr. Austin's examination again revealed minor cervical muscle contractions along with a restricted range of motion of the back and neck. [Tr. 194]. Muscle strength and tone were again full throughout the body. [Tr. 194]. Dr. Austin ordered further imaging, which showed a large anterior defect at C3-4 and nerve root compression at C4. [Tr. 189].

Plaintiff was then referred to pain medicine physician Turney Williams for an epidural injection. Curiously, plaintiff told Dr. Williams that physical therapy has no effect on her pain. [Tr. 526]. Dr. Williams reviewed plaintiff's prior cervical imaging and noted "some degenerative disc disease." [Tr. 524]. He later described her condition as "multiple *mild* degenerative disk disease." [Tr. 520] (emphasis added).

Dr. Samuel Breeding performed a consultative examination in February 2008. Range of motion was normal throughout, with the exception of the cervical spine. [Tr. 458]. Muscle strength was 4+/5 in both arms. [Tr. 458]. Dr. Breeding opined,

> Patient can lift 25 pounds occasionally. She can sit for 4 to 6 hours in an 8-hour day. She can stand for 2 to 4 hours in an 8-hour day but should be allowed to sit or stand as needed for comfort. She should not work around and use equipment nor should she operate any dangerous equipment.

[Tr. 459]. As to the restriction on standing, the only explanation found in Dr. Breeding's report is his statement, "Patient states that she is also quite weak and that she is unable to

5

stand for very long periods at a time." [Tr. 459].

Nonexamining physician Christopher Fletcher generated a Physical RFC Assessment in April 2008. Dr. Fletcher opined that plaintiff could lift amounts consistent with light exertion but that she could not stand and walk for more than 4 hours per day because "obesity contributes to fatuguability [sic], pace and persistence." [Tr. 467]. Dr. Fletcher further opined that plaintiff should never climb ladders or scaffolds, that she would be limited in overhead reaching, and that she should avoid hazards and concentrated exposure to respiratory irritants. [Tr. 468-70]. Dr. Fletcher wrote that a Fatigue Questionnaire completed by plaintiff [Tr. 121-22] "indicates significant reduction in activities." [Tr. 473]. Dr. Fletcher further stated that plaintiff's complaints of pain and fatigue are credible "given by [sic] the objective evidence from" Dr. Breeding. [Tr. 471].

Nonexamining Dr. Reeta Misra also completed a Physical RFC Assessment in July 2008. Dr. Misra imposed the same walking limitation as Dr. Fletcher. [Tr. 483]. In addition, Dr. Misra opined that plaintiff should avoid all exposure to machinery and hazards, and that she should engage in postural exertions (climbing, stooping, etc.) no more than occasionally. [Tr. 484, 486]. Dr. Misra's walking limitation is unexplained. [Tr. 483, 489].

At a June 2008 appointment with Dr. Warren Jones, plaintiff denied arm pain, shortness of breath, or seizures. [Tr. 585]. Plaintiff then visited neurologist Gamal Boutros in October 2008 regarding the seizure disorder, claiming to suffer 8 to 10 episodes per month. [Tr. 625]. On examination, muscle tone and strength were full, and range of motion

6

was limited only in the neck. [Tr. 626]. At an appointment with Dr. Jones on November 11, 2008, plaintiff reported "no confusional episodes" and "no recent seizures." [Tr. 610]. To Dr. Boutros the following week, plaintiff reported only one seizure in the prior month. [Tr. 659]. At a February 2009 appointment with Dr. Jones, it was noted that "[a]s patient was leaving she mentions that she had a seizure 2 to 3 weeks." [Tr. 624].[1]

Plaintiff returned to physical therapy in November 2008 but did not complete the recommended program. [Tr. 622]. She again on more than one occasion reported improvement in her pain as a result of the physical therapy. [Tr. 603, 605-06, 614, 622].

IV.

*Applicable Legal Standards*

This court's review is confined to whether the ALJ applied the correct legal standards and whether his factual findings were supported by substantial evidence. 42 U.S.C. § 405(g); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). Nonetheless, the court must take care not to "abdicate [its]

---

[1] The court presumes that Dr. Jones intended to write "2 to 3 weeks ago."

7

conventional judicial function," despite the narrow scope of review. *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 490 (1951).

A claimant is entitled to disability insurance payments under the Social Security Act if she (1) is insured for disability insurance benefits, (2) has not attained retirement age, (3) has filed an application for disability insurance benefits, and (4) is under a disability. 42 U.S.C. § 423(a)(1). "Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423 (d)(2)(A). Disability is evaluated pursuant to a five-step analysis summarized by the Sixth Circuit as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters*, 127 F.3d at 529 (citing 20 C.F.R. § 404.1520). Plaintiffs bear the burden of proof at the first four steps. *See Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *See id.*

V.

*Analysis*

Plaintiff argues that the ALJ "ignored" the opinions of Drs. Breeding, Fletcher, and Misra. Plaintiff also vaguely alludes to "other limitations" related to her "very severe seizure disorder." These issues will be addressed in turn.

A. <u>Dr. Breeding</u>

According to plaintiff, the ALJ "ignored" Dr. Breeding's opinion that she is unable to stand for more than four hours per workday. The import of Dr. Breeding's opinion is that light exertion, which the ALJ found plaintiff to be capable of performing, requires the ability to stand approximately *six* hours per workday. *See* SSR 83-10, 1983 WL 31251, at *6.

Dr. Breeding explained his four-hour standing limitation by noting, "Patient states that she is also quite weak and that she is unable to stand for very long periods at a

time." [Tr. 459]. The doctor's opinion was therefore based on plaintiff's self-reporting.

Contrary to what is argued on appeal, the ALJ did not "ignore" the views of Dr. Breeding. Quite the opposite, the ALJ explained,

> The opinions of the State Agency medical consultants and Dr. Breeding are generally consistent with the finding of the undersigned that the claimant can perform light work activity and thus considerable weight is given to these opinions. However, their opined limitations in standing and/or walking . . . are not supported by the overall evidence of record including clinical findings of treating and examining sources or the claimant's treatment history but are instead based in part on the claimant's subjective complaints which have not been found to be of the severity alleged . . . .

[Tr. 34]. In support of that conclusion, the ALJ cited the overall conservative treatment received by plaintiff, her generally normal muscle tone and strength, her normal range of motion except for her neck, the fact that physical therapy is beneficial "when she is compliant with treatment," and the fact that plaintiff's statements to the Commissioner appear to substantially overstate the frequency of her alleged "confusional episodes." [Tr. 32-33].

Substantial evidence exists to support the conclusion that plaintiff's subjective reporting is less than fully reliable. Plaintiff takes only over-the-counter medication for her allegedly disabling, "excruciating," and "nauseating" pain. [Tr. 124-25]. Her representations to the Commissioner regarding the frequency of her seizures [Tr. 12, 148] grossly exceed the contemporaneous frequency that she reported to most medical sources. [Tr. 585, 610, 624, 659, 668]. Carpal tunnel syndrome allegedly renders her unable to open a jar or use a keyboard or calculator [Tr. 15-16], yet she remains able to cross-stitch limited only by eventual neck pain [Tr. 117]. Plaintiff claims to be unable to stand for more than three

10

minutes without experiencing disabling lower back pain, yet she remains able to walk her daughter to the school bus stop, shop for groceries, walk to the mailbox, visit her mother next door, attend her daughter's band performances weekly, and go out to eat. Further, it is wholly unexplained why plaintiff would have represented to Dr. Williams that physical therapy (beneficial by all other accounts) has no effect on her pain.

  Certainly, the ALJ *could have* fully credited plaintiff's subjective complaints in this case, as there is objective evidence of conditions that could cause some degree of limitation. However, he could also have reasonably rejected plaintiff's subjective complaints based on the administrative record as discussed herein. The substantial evidence standard of review permits that "zone of choice." *Mullen*, 800 F.2d at 545. Further,

> after listening to what [plaintiff] said on the witness stand, observing [her] demeanor, and evaluating that testimony in light of what appears in the written medical records, the ALJ concluded, rightly or wrongly, that [plaintiff] was trying to make [her] symptoms and functional limitations sound more severe than they actually were. It is the ALJ's job to make precisely that kind of judgment. It is a difficult job, and the people who perform it sometimes err. Such errors are obviously difficult for a reviewing court to detect (the reviewing court not having seen the claimant in the flesh), and we will not normally substitute our impressions on the veracity of a witness for those of the trier of fact. We would be particularly reluctant to do so in this case, where there seem to be demonstrable discrepancies between what the claimant said on the stand and what the written record shows.

*Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). The ALJ was not required to credit any strain of evidence that is based on plaintiff's subjective reporting in this case, and he therefore did not err in rejecting the standing/walking limitation imposed by Dr. Breeding.

11

B. Nonexamining Sources

Plaintiff similarly argues that the ALJ "ignored" the opinions of nonexamining Drs. Fletcher and Misra pertaining to standing, obesity, postural limitations, and respiratory irritants. Again, plaintiff's accusation of "ignoring" is incorrect. The ALJ expressly found that the nonexamining doctors' "opined limitations in standing and/or walking, reaching and handling, postural movements, and the need to avoid respiratory irritants are not supported by the overall evidence of record . . . but are based in part on the claimant's subjective complaints which have not been found to be of the severity alleged . . . ." [Tr. 34].

To the extent that Dr. Fletcher based his opinions on those of Dr. Breeding, substantial evidence supports ALJ's rejection of his views for the reasons cited above. The same logic applies to the extent that Dr. Fletcher based his opinions on a subjective Fatigue Questionnaire [Tr. 121-22] completed by the plaintiff. As for Dr. Fletcher's predicted limitation on exposure to respiratory irritants, the only objective evidence cited by that source [Tr. 473] was a "normal" chest scan. *See* 20 C.F.R. § 404.1527(d)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. Furthermore, because nonexamining sources have no examining or treating relationship . . . , the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions.").

Dr. Misra did not explain her opined walking limitation at all, so that opinion was also properly rejected. *See id.* Lastly, to the extent that some of Dr. Fletcher's restrictions were based on obesity, the court notes that a registered nurse with plaintiff's former employer, Brookhaven Manor, completed an Employer Questionnaire in January 2008. Plaintiff's attendance, concentration, and pace were deemed to have been satisfactory [Tr. 128-29], even though plaintiff was morbidly obese during her term of employment. [Tr. 176, 452].

## C. Seizures

Lastly, in her briefing plaintiff alludes to "other limitations" associated with her "very severe seizure disorder." She does not, however, specify how the ALJ should have further limited her beyond the seizure precautions (not working around machinery or heights) that he imposed. The argument is therefore deemed waived. *See Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006); *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).

## D. Conclusion

The administrative record contains some objective indication of conditions that could reasonably be expected to cause some pain or limitation. The ALJ credited that evidence in restricting plaintiff's RFC to a range of light work. The record does not contain sufficient objective documentation to render that decision unsupported by substantial evidence. The final decision of the Commissioner will accordingly be affirmed. An order

13

consistent with this opinion will be entered.

ENTER:

s/ Leon Jordan<br>United States District Judge